UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DONALD POLINSKIE, JACQUELINE
STRETCH, and JAMES STRETCH

              Plaintiffs,            16 CV 3090 (DRH) (AKT)

     -against-                **AMENDED COMPLAINT**

VILLAGE OF MASTIC BEACH, MAURA
SPERY , BRUCE SUMMA, PATRICK McCALL,
and TERESA A. MADARASZ

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- -X

      Plaintiffs, DONALD POLINSKIE, JACQUELINE STRETCH and JAMES

STRETCH (collectively "Plaintiffs"), by their attorney, THE LAW OFFICES OF

JOHN B. ZOLLO, P.C., and LUMER & NEVILLE, as and for their Amended

Complaint, hereby allege as follows, upon information and belief:

**NATURE OF ACTION AND PRELIMINARY STATEMENT**

      1.      By this action for violations of the Fourth Amendment, the Due

Process Clause, and the Equal Protection Clause of the United States

Constitution, Plaintiffs seek redress for the ongoing unlawful practices of the

municipal defendant Village of Mastic Beach (the "Village" or "Mastic Beach"), as

well as the individual defendants, Maura Spery ("Spery"), Bruce Summa

("Summa"), Patrick McCall ("McCall") and Teresa A. Madarasz ("Madarasz"),

(collectively referred to herein as "Defendants") as well as any other person(s)

acting with, or on behalf of, Defendants.

2.      Mastic Beach is located in the southeast part of the Town of Brookhaven in Suffolk County, New York and became an incorporated village in 2010. Support for incorporating the village was based primarily on the desire to turn Mastic Beach into a more upscale summer (rather than year-round) community. To do this, according to one Village trustee, the Village would need to "get rid of undesirables."  To that end, Defendants established a policy and plan referred to as "Operation Take Back."  Through incorporation, Mastic Beach gained control over zoning, housing code enforcement and building permits, which had been previously administered by the Town of Brookhaven.

3.      Since incorporating, the Village has abused its newfound powers over the code enforcement processes by waging an aggressive campaign against owners of properties that did not meet the Village's "standards." Defendants have condemned homes or found them unfit for human habitation without sufficient ground, and then wrongfully forced the occupants/tenants and their families out of their homes in violation of constitutional, statutory, and municipal procedural safeguards governing the initiation of condemnation and eviction proceedings.

4.      This civil rights action challenges Defendants' acts and practices of enforcing the Village's building code and housing regulations in a manner designed to prevent low- and fixed-income persons, as well as persons with physical and mental disabilities, from residing in Mastic Beach. Specifically, the Village's systematic and intentional scheme to rid the area of "undesirables,"

including but not limited the handicapped and the disabled, as well as low- and fixed-income families, was carried out without any legitimate cause, notice, or due process, as reflected by Defendants' persistent practice of using the Village's code enforcement authority to unlawfully dispossess and displace individuals and their families from their homes. Defendants have harassed and intimidated Plaintiffs in a concerted and coordinated effort to remove them from their home and drive them out of the area. As a result, Plaintiffs have suffered a deprivation of their constitutionally protected due process rights under the Fourteenth Amendment, as well as their civil rights as guaranteed by federal and state statutes.

5.    By these and other discriminatory and illegal acts, Defendants have violated Plaintiffs' rights under the Fourth Amendment; the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the Civil Rights Act of 1871, namely 42 U.S.C. § 1983; the Fair Housing Amendments Act of 1988 (FHAA), namely 42 U.S.C. §§ 3604(f), (1)(B), (3)(B), 3617; New York State tort law; and New York statutory law, namely N.Y. Exec. Law § 296(18)(2) and N.Y. Real Property Actions and Proceedings Law (N.Y. R.P.A.P.L.) § 853.

6.    This civil rights action seeks to impose liability upon Defendants for their individual acts and their participation in a municipal scheme to implement and enforce an unlawful policy entitled "Operation Take Back," which policy's design, purpose, and effect was (and continues to be) to oust

"undesirables" from the Mastic Beach community, including low- and fixed-income families as well as people with physical and mental disabilities, whose displacement from their homes was carried out without legitimate cause, lawful procedure, or due process. As a result of this policy, Plaintiffs were denied the right to have and keep their property without unlawful confiscation by Defendants.

7.        Under color of state law, and pursuant to a municipal scheme to enforce an unlawful policy, Plaintiffs were denied their constitutional rights to due process, including the right of notice, the right to be heard, and the right to be safe and secure in one's home without unlawful government confiscation; the means employed by Defendants in enforcing this policy were intentional, arbitrary, unreasonable, oppressive, unlawful, unconstitutional, and bore no reasonable relation to the purported end sought to be accomplished. Plaintiffs were and continue to be subject to arbitrary, unreasonable, oppressive and unconstitutional demands by Defendants intended to interfere with Plaintiffs' right to possess, use, and occupy their home and property from which they were unlawfully removed by Defendants.

8.        Defendants are thus liable under 42 U.S.C. § 1983, for violating Plaintiffs' Fourth Amendment rights, as well as their rights to due process and equal protection under the United States Constitution, by unlawfully interfering with Plaintiffs' property rights, or otherwise neglecting to prevent said constitutional and civil rights violations.

9.     Defendants are also liable for violating Plaintiffs' civil rights under the Fair Housing Act (FHA), 42 U.S.C. §§ 3604(f)(1)(B), which, as amended in 1988, prohibits housing discrimination against the handicapped and/or the disabled. Defendants' arbitrary and illegitimate enforcement of housing and building code regulations in an attempt to dispossess Plaintiffs of their own home is tantamount to such prohibited discrimination, as the FHA, and specifically 42 U.S.C. § 3604(f)(1)(B), defines disability-based discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling."

10.     Plaintiffs' action also asserts supplemental state law claims as set forth below.

11.     Further, and pursuant to <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), Plaintiffs' action asserts a § 1983 claim for municipal liability against the Village, on account of its unlawful and unconstitutional municipal policy entitled "Operation Take Back."

12.     Plaintiffs seek a declaratory judgment enjoining Mastic Beach's discriminatory housing policies, injunctive and equitable relief, compensatory and punitive damages, and attorneys' fees and costs.

## PARTIES, VENUE AND JURISDICTION

13.     At all relevant times hereinafter mentioned, Donald Polinskie and Jacqueline Stretch, along with their disabled son, James Stretch, resided at 44 Dogwood Rd. Mastic Beach, New York (the "Premises"). As such, all three plaintiffs were and remain residents of Suffolk County in the Eastern District of the United States District Court of New York.

14.     At all relevant times hereinafter mentioned, Defendant Village of Mastic Beach was and continues to be a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and acts by and through its agencies, employees and agents, with its principal offices located at 369 Neighborhood Rd. Mastic Beach, New York 11951.

15.     At all relevant times hereinafter mentioned, Defendant Maura Spery was and is a resident of Mastic Beach and presently holds the office of Mayor of the Village. Spery is sued herein in her official and individual capacities.

16.     At all relevant times hereinafter mentioned, Defendant Bruce Summa was and is a resident of Mastic Beach and, at the time of the underlying incidents, held the office of Deputy Mayor of the Village. Summa is sued herein in his individual capacity.

17.     At all relevant times hereinafter mentioned, Defendant Patrick McCall was and is a resident of Mastic Beach and, at the time of the underlying incidents, held the office of Public Safety Supervisor of the Village. McCall is sued herein in his individual capacity.

18.	At all relevant times hereinafter mentioned, Defendant Teresa A. Madarasz was and is a resident of Mastic Beach and currently holds the office of Building Inspector of the Village. Madarasz is sued herein in her official and individual capacities.

19.	This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

20.	Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq., in the Eastern District of New York, where Plaintiffs and Defendants reside, and where the majority of the actions complained of herein occurred.

**SUPPLEMENTAL STATE LAW CLAIMS**

21.	Plaintiffs assert the following state law claims against Defendants: (i) Civil trespass; (ii) Intentional infliction of emotional distress; (iii) N.Y. Exec. Law § 296(18)(2); (iv) N.Y. Real Property Actions and Proceedings Law (N.Y. R.P.A.P.L.) § 853; and (v) As against the municipal defendant, Village of Mastic Beach, vicarious liability under state tort common-law principles for its agents' violations of Plaintiffs' civil and constitutional rights as secured by the Fair Housing Act, the Fourth Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, which violations were committed during the performance of the agents' duties and within the scope of their employment.

22.     Plaintiffs have complied with all obligations, requirements, and conditions precedent to commencing an action against a municipality pursuant to the General Municipal Law of the State of New York.

23.     A Notice of Claim was duly and timely served by Plaintiffs upon the municipal defendant, Village of Mastic Beach.

24.     The Village of Mastic Beach subsequently conducted an examination of Plaintiffs pursuant to General Municipal Law § 50-H.

25.     At least 30 days have elapsed since Plaintiffs' service of their Notice of Claim, and adjustment of payment thereof has been neglected or refused by the municipal defendant.

26.     This action is duly commenced within one year and 90 days from the happening of the event upon which Plaintiffs' claims are based.

**RELEVANT FACTS**

27.     The Village of Mastic Beach is located in the southeast part of the Town of Brookhaven in Suffolk County New York. The population of the Village was estimated at around 12,930 in 2010, at which time Mastic Beach was still an unincorporated census-designated place.

28.     After a vote of approval on August 31, 2010, the Village of Mastic Beach was officially incorporated.

29.     The Village's demographic makeup is approximately 75.5% white, 9.9% African-American, and 12.4% Latino. It is a middle-class community

with a median household income of $69,162, and with 15.5% of the population living below the poverty line.

30.     A major consideration and catalyst behind the incorporation of Mastic Beach was the poor and deteriorated condition of the many rental units and properties located in the Village. Through incorporation, the Village sought to become a code-enforcement village.

31.     The mission of the Village post-incorporation was to clean up the neighborhood, embarking upon a policy and program labeled and identified as "Operation Take Back."

32.     Upon information and belief, and as proclaimed at Town hall meetings and elsewhere, the original purpose of that policy and program, as initiated by the Village, was to monitor abandoned homes and remove illegal squatters.

33.     The Village identified "Operation Take Back" as an initiative and policy designed to improve the quality of life in the Village. The policy's motivating purpose, however, was to displace those deemed "undesirables," namely individuals and families whose residence in the village is thought to depress property values and property tax revenues.

34.     Upon information and belief, during the lead-up to the incorporation of Mastic Beach, statements were made indicating that incorporation was intended to eliminate illegal renters, squatters and slumlords.

35.     Upon information and belief, since the incorporation of Mastic Beach, the Village and its officials have abused and exceeded their authority over rental permit and code enforcement processes by condemning homes or finding them unfit for human habitation without sufficient legal grounds, pre-determination hearings, or any modicum of due process.

36.     The Village and the individual defendants have wrongfully embarked on a program and policy of evicting tenants and barring homeowners from entering their homes all without notice and in violation of procedural safeguards otherwise established for such actions.

37.     As a result of these illegal actions undertaken by Defendants, the Village of Mastic Beach currently faces other lawsuits in the United States District Court for the Eastern District of New York alleging violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, the Fair Housing Act, and the Suffolk County Human Rights Law.

38.     Plaintiff Polinskie has owned his home at 44 Dogwood Rd. (the "Premises") in Mastic Beach for approximately 19 years. He has resided there with his longtime partner and mate, Jacqueline Stretch, who is physically disabled. Their autistic son, James Stretch, has lived with them at the Premises. Plaintiff James Stretch is approximately 22 years old.

39.     On August 29, 2015, Plaintiffs left the Premises to go out for dinner. At that time, a family friend, William Cahill, was in the driveway of

Plaintiffs' residence. Defendants then came upon the Premises claiming to have received a call or complaint that Cahill's van was emitting smoke, which complaint was later claimed to be one for the criminal possession and/or sale of controlled substances.

40.     Upon information and belief, Defendant Patrick McCall, who was the Village's Public Safety Supervisor at the time, threatened and coerced Cahill into letting him and other Village officials enter the Premises under pretense of conducting a fire inspection.

41.     Upon information and belief, McCall informed Cahill that he would be arrested if he did not permit Defendants to access the Premises.

42.     Cahill suffers from a mental disability that affects his thought processes and cognitive functions, and Cahill's disability is such that no reasonable government officer could have reasonably believed that Cahill had the mental capacity to consent to entry into and/or a search of the Premises.

43.     By means of threats and intimidation, Defendant McCall coerced Cahill into signing a document purporting to give Defendants permission to enter and inspect the Premises.

44.     Having forced Cahill to sign said document, Defendants entered the Premises, condemned the home and boarded it up so as to prevent Plaintiffs' re-entry into their own home.

45.     Upon returning home from dinner that night at approximately 9:30 PM, Plaintiffs discovered their home completely boarded up, with notices posted on the property purporting to prohibit their re-entry into the Premises.

46.     Plaintiffs contacted Defendants and awaited their arrival.

47.     Upon arriving at the Premises at approximately 1:30 AM that same night, defendant McCall and defendant Teresa A. Madarasz, who was and continues to be the Village's Building Inspector, served Plaintiffs with tickets for allegedly renting their home without a permit.

48.     Plaintiffs were told by Defendant Madarasz that they could not re-enter their own home unless they provided a letter from an architect attesting that the Premises were structurally sound.

49.     Defendants refused to even allow Plaintiff Jacqueline Stretch to access the premises that night so she could retrieve her medication, which she was not allowed to do until the next morning, causing her and her family severe mental anguish and emotional distress.

50.     Except for occasional visits during the day, Plaintiffs were thereafter prohibited from living in their own home.

51.     Defendants' conceded permission of occasional access to the premises by Plaintiffs negates any claim of health or safety emergency requiring instantaneous evacuation of the Premises on the night of August 29, 2015.

52.     As a result of Defendants' actions, Plaintiffs were dispossessed and ousted from their home continuously from August 29, 2015, until some time in or about August 2016, when Plaintiffs reoccupied the premises after it had been burglarized and vandalized due to Defendants' neglectful and/or intentional conduct or omissions.

53.     Defendants have since agreed not to further interfere with Plaintiffs' enjoyment of their property pursuant to the terms of the preliminary injunction settlement agreement as entered on September 1, 2016, and which became effective on September 7, 2016.

54.     Prior to their illegal ouster from their home, Plaintiffs had not received any notice(s), complaints, or summonses from the Village or any of the Defendants at any point in time.

55.     Defendants' condemnation of Plaintiffs' home was not preceded by any notice whatsoever except for the so-called "notices" posted on the property that night purporting to disallow Plaintiffs' re-entry into the Premises, and not otherwise containing any notice of any contemporaneous or post-deprivation proceeding to contest the Village's arbitrary condemnation.

56.     Prior to August 29, 2015, Plaintiffs had received only one ticket from the Village regarding the size of the bushes on their property, and nothing whatsoever with respect to the structural soundness of the Premises or any alleged hazardous condition therein.

57.     Following Defendants' illegal condemnation of the premises, Plaintiffs were forced to borrow money in order to retain an architect's services and obtain the requisite letter demanded by Defendants as a condition to Plaintiffs' re-entry and resumption of occupancy in their home.

58.     On September 22, 2015, Plaintiffs' architect issued a report pursuant to and in fully compliance with Defendants' demands, stating in pertinent part that the Premises were habitable and its structural condition did not present any imminent danger. While the Premises could certainly benefit from some repairs, its structural condition was sound, and not hazardous as Defendants had led Plaintiffs to believe.

59.     Defendants rejected the architect's report and continued to deny Plaintiffs permission to live in their own home.

60.     On September 17, 2015 Defendant Summa made an announcement online stating that 44 Dogwood Rd. had been cleared of squatters as part of the Village's "Operation Take Back" policy.

61.     Plaintiffs made numerous subsequent requests to be allowed to move back into their home, which Defendants repeatedly and summarily denied for no ostensibly legitimate reason.

62.     Defendants then demanded that Plaintiffs obtain various permits before they could perform any repair work on the Premises, even though the proposed repair work qualified as "in-kind" repairs for which no permit or pre-authorization is believed to be required.

63.     Specifically, Defendants demanded and continue to demand that Plaintiffs prepare architectural drawings for the second story of the Premises which has been in existence well before Polinskie purchased Plaintiffs' home.

64.     Plaintiffs lack the funds and resources to obtain the architectural drawings demanded by Defendants.

65.     On March 17, 2016, Plaintiffs provided Defendants with a second report from a licensed architect finding the Premises habitable and in sound structural condition. Notwithstanding this second architect report, the municipal defendant, through its agents and representatives, continued to deny Plaintiffs permission to live in their own home.

66.     Defendants' year-long condemnation of Plaintiffs' home was without lawful authority as it denied Plaintiffs the right to live in their home without due process of law.

67.     Defendants' condemnation of Plaintiffs' home was continuously in violation of the procedures set forth in the Village's own Code. Chapter 180 of the Village Code, entitled "Buildings and Structures, Unsafe and Vacant", and which is available at http://ecode360.com/14996612, sets forth the procedures that the Village must follow before condemning homes and properties, which procedures are meant to safeguard and protect homeowners from unlawful condemnation by the Village:

**a.** Section 180–4 "NOTICE TO REPAIR OR REMOVE", reads as follows:

A. When it shall be determined by the Building Inspector that a building, property or structure is dangerous, hazardous, or unsafe to the public, or that a condition is hazardous or unsafe, **he shall promptly serve or cause to be served a written notice on the owner or other persons having an interest in such property or structure as hereinafter provided.**

B. The aforementioned notice shall be served on the owner of the premises, the owner's executors, legal representatives, agents, lessees, or other person having a vested or contingent interest in the same, as shown by the last completed assessment roll of the Village, either personally or by registered mail, addressed to the person intended to be served at the last known place of business or residence as indicated on the last completed assessment roll. **The Building Inspector shall cause a copy of such notice to be posted on the premises, and a copy of the notice shall be filed with the Suffolk County Clerk.**

**b.** Pursuant to Section 180–5 "CONTENTS OF NOTICE ",the notice mandated by Section 180–4 referenced above must contain the following:

A. A description of the premises.

B. A statement of the particulars in which the building, property or structure is dangerous, hazardous, or unsafe.

C. An order requiring the building, property, or structure to be made safe and secure or removed or the condition to be remedied or removed.

D. A statement that the securing or removal of the building or structure or removal of the condition shall commence within 10 days of the date of the service of the notice and shall be completed within 30 days thereafter. The Building Inspector may extend the time of compliance specified in the notice where there is evidence of intent to comply within the time specified and conditions exist which prevent immediate compliance. In granting any such extension of time, the Building Inspector may impose such conditions as he may deem appropriate.

E. A statement that, in the event of neglect or refusal of the person served with the notice to comply with the same, a hearing will be held before the Board of Trustees of the Village of Mastic Beach, notice of

which and the time and place thereof to be specified in the notice to the owner referred to in § 180-5 hereof.

F.  A statement that, in the event that the Village Board, after the hearing specified in § 180-7, shall determine that the building, property, or structure or condition thereon is dangerous, hazardous, or unsafe to the public, the Village Board may order the building, property, structure, or condition to be corrected, repaired or secured or taken down, abated or removed.

G.  A statement that, in the event that the building, property, structure or condition shall be determined by the Village to be dangerous, hazardous, or unsafe, and in the event of the neglect or refusal of the owner to correct, repair or remove the condition, building or structure within the time provided, the Village may correct the condition or remove such building or structure by whatever means it deems appropriate and assess all costs and expenses incurred by the Village in connection with the proceedings to remove or secure, including the cost of actually remedying said unsafe or dangerous building, condition, or structure, or removing said building or structure and any engineering, legal or other expenses, as an assessment against the land on which said building or structure is located, to be charged to the owner of the property on the next Village tax roll, although the levying of an assessment by the Village against the property on the next Village tax roll shall not be an exclusive remedy and shall not preclude the Village from any other available remedy, including but not limited to pursuing a civil judgment against the owner of the property to recover the costs.

**c.** Section 180–6 entitled, "FILING OF COPY OF NOTICE", reads as follows:

A copy of the notice referred to in § 180-4 hereof may be filed with the Suffolk County Clerk, which notice shall be filed by the Suffolk County Clerk in the same manner as a notice of pendency pursuant to Article 65 of the Civil Practice Law and Rules and shall have the same effect as a notice of pendency as therein provided, except as otherwise hereinafter provided in this section. A notice so filed shall be effective for a period of one year from the date of filing; provided, however, that it may be vacated upon the order of a Judge or Justice of a court of appropriate jurisdiction or upon the consent of the Village Attorney.

**d.** Section 180–7, entitled, "HEARING", reads as follows:

The Village Board shall conduct the public hearing at the time and place specified in the notice to cure, remedy, repair, or demolish, or to remove or correct the unsafe or hazardous building, condition, property or structure as necessary. It may adjourn the hearing from

time to time until all interested parties are heard and until the hearing is completed. At the conclusion of the hearing, the Village Board shall determine by resolution to:

A. Revoke the order of the Building Inspector;

B. Modify said order; or

C. Continue and affirm said order to direct the owner or other persons to complete the work within the time specified in the order or such other time as shall be determined by the Village Board.

**e.** Section 180–8, entitled, "EMERGENCY MEASURES" reads as follows:

If the Building Inspector determines, in his inspection of any building, condition, property or structure, that there is **actual and immediate danger of failure or collapse or so as to endanger life, or other imminent hazard creating a danger to the public or public order and safety** in the Village of Mastic Beach, the Building Inspector shall promptly require the building, condition, property or structure or a portion thereof to be vacated forthwith and not to be reoccupied until the specified repairs are completed and inspected and approved by the Building Inspector or take such other action as may be appropriate under the circumstances. For this purpose, the Building Inspector may enter such building, property or structure or land on which it stands or adjoining land or structures with such assistance and at such costs as may be necessary. The Building Inspector may also order adjacent buildings, properties or structures or portions thereof to be vacated and protect the public and public order and safety by appropriate barricades or such other means as may be necessary and for this purpose may close a private or public right-of-way. The Building Inspector shall cause to be posted at each entrance to such building, property or structure a notice stating: "This building (property, structure) is unsafe, and its use or occupancy has been prohibited by the Building Inspector." Such notice shall remain posted until the required repairs are made or demolition is completed. It shall be unlawful for any person, firm or corporation or their agents or other persons to remove such notice without written permission of the Building Inspector or for any person to enter the building except for the purpose of making the required repairs or the demolition thereof. The costs of any such action, including but not limited to labor, materials, management, professional and or legal fees and costs and expenses, shall be assessed as a lien against the property on which the condition exists and shall be collected in the same manner as if real property taxes.

68.     Defendants have failed to follow their own procedural rules as set forth in the Village Code: Section 180–8 authorizes the Building Inspector to take emergency measures only when **"there is actual and immediate danger of failure or collapse or so as to endanger life, or other imminent hazard creating a danger to the public . . . ."**

69.     There was no such finding by Defendants to authorize emergency measures and thus no justification for Defendants' immediate and instantaneous condemnation of Plaintiffs' home.

70.     Indeed, by Defendants' own admission, Defendants' inspection of Plaintiffs' property that night lasted mere minutes and did not reveal any actual or imminent danger necessitating the Premises' immediate evacuation.

71.     Upon information and belief, and after a diligent search of County records, it appears Defendants never filed a copy of the Notice with the Suffolk County Clerk as required by § 180–4(A) of the Village Code.

72.     Plaintiffs were rendered homeless and displaced for a whole year as a result of Defendants' unlawful actions which were done in furtherance of the municipal policy titled "Operation Take Back."

73.     Defendants have persistently condemned numerous homes in Mastic Beach under the pretense of public health and safety, each time consistently finding the condemned premises "unfit for human habitation" and ousting its occupants in a matter of hours. See, e.g., Complaint, Long Island Housing Services, Inc. et al v. Village of Mastic Beach et al., No. 15-0629

(E.D.N.Y. Feb. 1, 2016) (alleging discriminatory housing code enforcement by the Village against African Americans); Complaint, <u>Holland v. Village of Mastic Beach et al.</u>, No. 16-0504 (E.D.N.Y. Feb. 9, 2015) (alleging discriminatory housing code enforcement by the Village against the disabled).

74.     Defendants' unlawful actions were all in furtherance of a plan and policy whose purpose and effect is to harass, intimidate, and ultimately oust lower and fixed-income persons, as well as persons with disabilities, from the Mastic Beach community.

75.     Defendants, individually and collectively, caused the violation of Plaintiffs' constitutional and civil rights, by actively promoting and participating in a plan and policy designed to dispossess Plaintiffs of their home without due process and in violation of their rights under the Due Process Clause, the Equal Protection Clause, the Fourth Amendment, the Fair Housing Act, and state tort and statutory law.

76.     Each and every one of the individual defendants was aware of the Village's unlawful and unconstitutional condemnation of Plaintiffs' home, and despite ample time and opportunity to do so, consciously failed to exert any effort or take any action to intervene or otherwise put a stop to the aforementioned constitutional and civil rights violations, by remaining silent or otherwise deliberately choosing not to take any meaningful steps to rectify or remedy the harm and injuries suffered by Plaintiffs as a result of the municipal defendant's unlawful policy to clean up and rid the neighborhood of "undesirables" at

whatever cost and by whatever means necessary, in complete and utter disregard for its constitutional and statutory obligations.

77. To the extent that any of the individual defendants did not directly engage in the aforementioned unconstitutional actions, each and every such defendant was made aware and/or should have been aware of their fellow officers' illegal and unconstitutional actions in violation of Plaintiffs' constitutional and civil rights, and having such knowledge and the power and opportunity to intercede in and/or prevent the harm and injuries suffered by Plaintiffs, failed to take action thereby causing and/or aiding and abetting in the violation of Plaintiffs' constitutional and civil rights.

## FIRST CAUSE OF ACTION

(§ 1983 Claim for Fourth Amendment Violations and Illegal Entry into Premises)

78. Plaintiffs repeat the preceding allegations as though fully set forth herein.

79. Defendants willfully entered and searched Plaintiffs' residence without a warrant, without exigency, and without consent.

80. By so doing, Defendants, individually and collectively, subjected Plaintiffs to unlawful entry and search of their home and property, and thereby violated, or aided and abetted in the violation of Plaintiffs' rights under the Fourth Amendment of the United States Constitution.

81.     By reason thereof, Defendants have violated 42 U.S.C. § 1983 and caused Plaintiffs to suffer emotional injuries, mental anguish, the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

(§1983 Claim for Violations of the Due Process Clause)

82.     Plaintiffs repeat the preceding allegations as though set forth fully herein.

83.     Defendants' aforementioned conduct deprived Plaintiffs of their right to possess their property and live in their own home without any notice or opportunity to be heard in violation of 42 U.S.C. §1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

84.     By reason thereof, Defendants have violated 42 U.S.C. § 1983 and caused Plaintiffs to suffer emotional injuries, mental anguish, the deprivation of liberty, and the loss of their constitutional rights.

## THIRD CAUSE OF ACTION

(§ 1983 Claim for Violations of the Equal Protection Clause)

85.     Plaintiffs repeat the preceding allegations as though fully set forth herein.

86.     Defendants' aforementioned conduct deprived Plaintiffs of equal protection of the law and discriminated against Plaintiffs on the basis of

income, wealth, and disability in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

87.     Defendants' actions were completely arbitrary, intentional, willful, and taken in complete disregard for the rights of Plaintiffs for no legitimate purpose, and lacking any rational connection to a legitimate or cognizable municipal or governmental interest.

88.     By reason thereof, Defendants have violated 42 U.S.C. § 1983 and caused Plaintiffs to suffer emotional injuries, mental anguish, the deprivation of liberty, and the loss of their constitutional rights.

**FOURTH CAUSE OF ACTION**

(§ 3604(f) Claim for Fair Housing Act Violations)

89.     Plaintiffs repeat the preceding allegations as though set forth fully herein.

90.     Defendants' aforementioned acts and conduct violated Plaintiffs' civil rights under the Fair Housing Act (FHA), 42 U.S.C. §§ 3604(f)(1)(B), which, as amended in 1988, prohibits housing discrimination against the handicapped and/or the disabled.

91.     Defendants' arbitrary and illegitimate enforcement of housing and building code regulations against Plaintiffs in an attempt to dispossess them of their own home amounts to actionable discrimination under the FHA, and

specifically 42 U.S.C. § 3604(f)(1)(B), which defines disability-based discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling."

## FIFTH CAUSE OF ACTION

(§ 3617 Claim for Interference/Coercion/Intimidation under the Fair Housing Act)

92.     Plaintiffs repeat the preceding allegations as though set forth fully herein.

93.     Defendants' aforementioned acts and conduct violated Plaintiffs' civil rights under the Fair Housing Act (FHA), and specifically 42 U.S.C. §§ 3617, which, makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by § 3604.

94.     Defendants' arbitrary and unlawful enforcement of building/housing code regulations against Plaintiffs in an attempt to dispossess them of their own home is in violation of Plaintiffs' civil rights under § 3617, as is Defendants' harassment and intimidation of Plaintiffs in a concerted and coordinated effort to remove them from their own home and drive them out of the Mastic Beach community.

## SIXTH CAUSE OF ACTION

(§1983 Monell Claim for Municipal Liability Against the Village of Mastic Beach)

95.     Plaintiffs repeat the preceding allegations as though set forth fully herein.

96.     The individual defendants' violations of Plaintiffs' civil and constitutional rights were carried out in accordance with an existing plan or policy, entitled "Operation Take Back," which policy was created or otherwise condoned by the municipal defendant, and was designed to oust "undesirables" from the neighborhood, including low- and fixed-income families as well as people with physical and mental disabilities, whose displacement from their homes was carried out without legitimate cause, lawful procedure, or due process.

97.     As a result of this unlawful municipal policy, Plaintiffs were denied the right to have and keep their property without unlawful confiscation by Defendants, and suffered emotional injuries, mental anguish, the deprivation of liberty, and the loss of their constitutional rights.

## SEVENTH CAUSE OF ACTION

(State Law Vicarious Liability Against the Village of Mastic Beach)

98.     Plaintiffs repeat the preceding allegations as though set forth fully herein.

99.     At all times relevant herein, the individual defendants were acting within the scope of their employment, and their acts were done in

furtherance of the Village of Mastic Beach's interests and without legal justification or excuse.

100.     Municipalities are "persons" within the meaning of both the Fair Housing Act, and § 1983 of the Civil Rights Act, and under the theory of respondeat superior may be held liable vicariously for the discriminatory acts and/or or omissions of their agents and employees when carried out within the scope of their employment.

101.     The individual defendants were at all relevant times acting within the scope of their employment as subordinate officers and agents of the municipal defendant.

102.     The Village of Mastic Beach is therefore vicariously liable to Plaintiffs under 42 U.S.C. §§ 3604(f), 3617, and 1983, for the individual defendants' violations of Plaintiffs' civil and constitutional rights under the Fair Housing Act, the Fourth Amendment, and the Due Process Clause of the Fourteenth Amendment.

## EIGHTH CAUSE OF ACTION

### (Trespass)

103.     Plaintiffs repeat the preceding allegations as though fully set forth herein.

104.     Defendants willfully entered and searched Plaintiffs' residence without a warrant, without exigency, and without consent.

105.     By so doing, Defendants, individually and collectively, caused an intentional physical intrusion onto Plaintiffs' property without justification or permission, and thereafter remained on Plaintiffs' property unlawfully and without justification or permission.

106.     By reason thereof, Defendants are liable to Plaintiffs for civil trespass under New York common law.

## NINTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

107.     Plaintiffs repeat the preceding allegations as though set forth fully herein.

108.     Defendants' conduct as set forth above was so extreme and outrageous as to have been intended to inflict upon Plaintiffs severe emotional distress arising from their unlawful displacement and removal from their own home.

109.     As a result of Defendants' oppressive and outrageous conduct, Plaintiffs were ousted from their home on August 29, 2015, and were thereafter dispossessed and displaced continuously for an entire year.

110.     The means employed by Defendants in enforcing the municipal policy of "Operation Take Back" were intentional, arbitrary, unreasonable, oppressive, unlawful, unconstitutional, and bore no reasonable relation to the purported end sought to be accomplished.

111.     Plaintiffs were continuously subjected to arbitrary, unreasonable, oppressive and unconstitutional demands by Defendants intended to prevent Plaintiffs' return to their home from which they had been unlawfully removed and displaced continuously for a whole year.

## TENTH CAUSE OF ACTION

(N.Y. Exec. Law § 296—Unlawful discriminatory practices)

112.     Plaintiffs repeat the preceding allegations as though set forth fully herein.

113.     Defendants' aforementioned acts and conduct violated Plaintiffs' civil rights under § 296(18)(2) of New York Executive Law, which makes it unlawful to "refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling."

114.     Defendants' arbitrary and unlawful enforcement of housing and building code regulations in an attempt to dispossess Plaintiffs of their own home violates Plaintiffs' civil rights under § 296(18)(2) of New York Executive Law.

# ELEVENTH CAUSE OF ACTION

(New York Real Property Actions and Proceedings Law § 853)

115.     Plaintiffs repeat the preceding allegations as though set forth fully herein.

116.     Defendants' aforementioned acts and conduct violated Plaintiffs' civil rights under § 853 of New York Real Property Actions and Proceedings Law (N.Y. R.P.A.P.L.) which provides that if a person is disseized, ejected, or put out of real property in an unlawful manner, or, after he has been put out, is held and kept out by unlawful means, he is entitled to recover treble damages.

117.     Plaintiffs thus seek to recover treble damages against Defendants for their unlawful condemnation of Plaintiffs' home through arbitrary enforcement of housing and building code regulations by means designed to harass and intimidate Plaintiffs in oppressive, unlawful, and unconstitutional ways that bear no reasonable relation to the purported end sought to be accomplished.

118.     Plaintiffs were continuously subjected to arbitrary, unreasonable, oppressive and unconstitutional demands by Defendants intended to prevent Plaintiffs' return to their home from which they had been unlawfully removed and displaced continuously for a whole year.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally as follows:

i.    An Order and Judgment declaring Defendants' acts, practices and policies complained of herein unlawful and in violation of Plaintiffs' rights as secured by the Fourth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; the Civil Rights Act of 1871, namely 42 U.S.C. § 1983; the Fair Housing, namely 42 U.S.C. §§ 3604(f), (1)(B), (3)(B), and 3617; New York State tort law, and New York statutory law, namely N.Y. Exec. Law § 296(18)(2) and N.Y. R.P.A.P.L. § 853;

ii.    An Order and Judgment enjoining Defendants, their agents, employees, successors, assigns, and those acting in active concert, combination or participation with them, from engaging in any policies or practices that deprive Plaintiffs of the rights secured by any and all of the constitutional and statutory provisions cited in subparagraph (i) above, including the following:

> (a) enforcing or attempting to enforce the Village Building Code in a manner that discriminates against lower- and fixed-income persons and/or persons with disabilities;

> (b) refusing to make any and all necessary modifications to the Village's municipal policies, practices and/or procedures concerning the condemnation of homes and the declaring of homes to be unsafe structures, in order to comply with each and every constitutional and/or statutory provision cited in subparagraph (i) above ; and

> (c) enjoining Defendants from using coercion, threats, and/or intimidation or otherwise interfering with the rights of homeowners in their enjoyment and use of their property, in violation of any and all constitutional and/or statutory provision cited in subparagraph (i) above.

iii.    Actual compensatory and punitive damages against each of the individual defendants in an amount to be determined at trial in order to compensate Plaintiffs fully for any economic losses, diversion of

resources, and the humiliation, degradation, embarrassment and emotional distress suffered due to Defendants' discriminatory, unlawful, and unconstitutional conduct;

iv. Treble damages against Defendants for their unlawful condemnation of Plaintiffs' home pursuant to New York Real Property Actions and Proceedings Law § 853;

v. Actual compensatory damages against the municipal defendant in an amount to be determined at trial;

vi. Statutory attorney's fees pursuant to, inter alia, 42 U.S.C. § 1988 and New York common law, as well as disbursements, and costs of the action; and

vii. Such other relief as this Court deems just, proper and equitable.

Dated:  New York, New York
         September 26, 2016

Respectfully Submitted,

*Attorneys for Plaintiffs*

John B. Zollo, Esq.
Law Offices of John B. Zollo, P.C.,
38 Southern Blvd., Suite 3
Nesconset, New York 11767
(631) 979-9022

James Concemore Neville, Esq.
Khalil El Assaad, Esq.
Lumer & Neville
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

By:  _____/s/_____
     James C. Neville, Esq.